BARBARA J. CHISHOLM, SBN 224656
bchisholm@altber.com
CONNIE K. CHAN, SBN 284230
cchan@altber.com
ELIZABETH ESHLEMAN, SBN 354649
eeshleman@altber.com
**ALTSHULER BERZON LLP**
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151

LISA DEMIDOVICH, SBN 245836
ldemidovich@altber.com
**ALTSHULER BERZON LLP**
350 Colorado Blvd., Suite 420
Pasadena, CA 91105
Tel: (415) 421-1855

ELIZABETH GRDINA (Pro Hace Vice forthcoming)
bgrdina@jamhoff.com
CHARLOTTE H. SCHWARTZ (Pro Hace Vice forthcoming)
chschwartz@jamhoff.com
SEJAL SINGH (Pro Hace Vice forthcoming)
ssingh@jamhoff.com
**JAMES & HOFFMAN, P.C.**
1629 K Street, NW, Suite 1050
Washington, DC 20006
Tel: (202) 496-0500

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| SERRANA CYPRET, individually and on behalf of all other similarly situated aggrieved employees,<br><br>Plaintiff,<br><br>v.<br><br>STARBUCKS CORPORATION,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

Plaintiff Serrana Cypret ("Plaintiff") brings this class and Labor Code Private Attorneys General Act of 2004 ("PAGA") action against defendant Starbucks Corporation ("Starbucks" or "Defendant"), on behalf of herself and all other similarly situated aggrieved employees and in her representative capacity on behalf of the State of California for herself and all other similarly situated aggrieved employees. Plaintiff makes the following allegations based upon personal knowledge as to her own actions and upon information and belief as to all other matters.

**INTRODUCTION**

1. Starbucks is a fast-food chain that sells coffee, other beverages, and food. Starbucks operates thousands of store locations throughout California and employs tens of thousands of hourly in-store workers in California as baristas and shift supervisors ("employees").

2. In April 2025, Starbucks announced new uniform requirements ("2025 Dress Code" or "Dress Code"), which are still in effect today. The 2025 Dress Code differs significantly from Starbucks' previous dress code and includes strict specifications for what types and color of apparel and footwear employees must wear. In addition, the 2025 Dress Code includes new restrictions on tattoos, jewelry, and piercings. Starbucks strictly enforces its new Dress Code, which prohibits many clothing items that Starbucks previously permitted. As a result, employees have had to incur substantial costs to purchase additional Dress Code-compliant tops, bottoms, and shoes or to remove piercings to avoid being disciplined, sent home without pay, or even fired for violating the Dress Code. Starbucks does not reimburse and has not reimbursed employees for these costs.

3. At around the same time Starbucks announced the 2025 Dress Code, it began requiring baristas and shift supervisors to download a scheduling app on their personal phones. Employees must use the scheduling app to, among other things, see what shifts they are scheduled for, swap shifts with coworkers, or obtain additional shifts at other stores in their area. This usage is in addition to managers and supervisors regularly contacting employees on their personal cellular phones regarding work. Starbucks has failed to reimburse employees for a reasonable percentage of their cellular plan or the daily cost associated with the use of their personal cellular phones.

4. On September 17, 2025, Plaintiff Serrana Cypret provided Starbucks and the California Labor and Workforce Development Agency ("LWDA") with the required notice of intent to bring this

PAGA action.[1] The requisite 65 days have passed, and LWDA has not provided notice that it intends to pursue Starbucks for the violations alleged in the PAGA Notice. Plaintiff now brings this class action and PAGA action on behalf of the State of California and other current and former employees of Starbucks based on Starbucks' failure to provide or reimburse the cost of uniforms and failure to reimburse other reasonable business expenses in violation of the California Labor Code. Accordingly, Plaintiff seeks damages, declaratory and injunctive relief, and all penalties permitted under PAGA.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction under (a) 28 U.S.C. §1332(d) because this is a class action in which the amount in controversy exceeds $5,000,000, there are more than 100 putative class members, and the majority of putative class members are citizens of a state different than the state of which Starbucks is a citizen; and (b) 28 U.S.C. §1332(a) because Plaintiff and class members are citizens of California, Starbucks is incorporated under the laws of Washington and has a principal place of business in Washington, and the amount in controversy exceeds $75,000.

6.  This Court has specific personal jurisdiction over Starbucks because Starbucks has sufficient minimum contacts with California, has purposely availed itself of the benefits and protections of California law, and conducts a substantial amount of business in the State of California, such that the Court's exercise of personal jurisdiction over Starbucks accords with due process.

7.  Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the acts complained of occurred in the Northern District of California.

8.  Divisional Assignment to the San Jose Division is proper because a substantial part of the acts complained of occurred in Santa Cruz County, where Plaintiff works.

## PARTIES

9.  Plaintiff Serrana Cypret has been employed as a barista and barista trainer at the Starbucks store located at 260 Mt. Herman Road in Scotts Valley, California since 2021.

10.  Defendant Starbucks is a company incorporated under the laws of the State of Washington and whose principal place of business is located at 2401 Utah Avenue South, Seattle, Washington 98134. Starbucks operates its business throughout the United States, including in California.

---

[1] *See* Ex. 1 (PAGA Notice).

11. Plaintiff brings a PAGA claim in her individual and representative capacity on behalf of the State of California and on behalf of all of Starbucks' current and former hourly, non-exempt employees who were employed in California and who suffered one or more California Labor Code violations enumerated herein ("Aggrieved Employees") at any time between September 17, 2024 and the present ("PAGA Period").

12. Plaintiff brings her claims for violations of the California Labor Code on behalf of herself and others similarly situated.

**FACTUAL ALLEGATIONS**

I. **Starbucks' 2025 Dress Code Policy and Failure to Provide or Reimburse the Cost of Uniforms.**

13. Prior to April 2025, Starbucks maintained a far more relaxed dress code that encouraged employees to "show up as [their] authentic selves." (emphasis omitted). Starbucks employees could comply with the prior dress code's requirements by wearing clothes they already owned. For example, acceptable tops under the old dress code included solid-colored shirts of virtually any color or design and shirts with small prints or logos; acceptable bottoms included pants of any dark color, including earth tones, as well as light-colored jeans; and acceptable shoes included rubber shoes with some openings on the top of the foot, such as crocs. Prior to April 2025, Starbucks only loosely enforced its dress code.

14. In April 2025, Starbucks announced new uniform requirements for all Starbucks hourly in-store employees in the job titles of barista and shift supervisor across all stores, including all California locations. Under the 2025 Dress Code, Starbucks baristas and shift supervisors are no longer allowed to wear many of the apparel items previously permitted under Starbucks' prior dress code policy. Instead, under the 2025 Dress Code, which Starbucks strictly enforces, baristas and shift supervisors are required to wear a uniform consisting of the following:

   a. Tops: Tops must be solid black with no patterns, prints, graphics, typography (except specified Starbucks-branded shirts), or raw hems, in one of the following styles: crewneck, collared, or button-up shirt; lightweight jacket; or crew neck sweatshirt. Tops must cover workers' shoulders, armpits, chest area, and mid-section, including when arms are raised. Prohibited styles and designs include solid black tank tops and camisoles, blouses with

necklines other than crewneck or collared necklines, and "[g]ym or workout apparel."

b. Bottoms: Bottoms must be black, khaki, or black or blue denim, with no patterns, prints, graphics, typography, or raw hems. Overalls, jumpsuits, and dresses must be solid black and no more than 4" above the knee. Prohibited styles and designs include black leggings and tights (unless worn under other approved apparel), pants or skirts with raw hems, ripped or distressed jeans, sweatpants or joggers, yoga pants, and other pants "made of stretch material" (unless as part of an approved accommodation, such as a pregnancy accommodation).

c. Footwear: Footwear must be shoes or boots that "[c]over[] all parts of the top of the foot with a closed heel and toe." Shoes or boots must be black, grey, navy blue, brown, tan, or white with no more than a small amount of accent color, and must be made of "[l]eather, faux leather, suede, rubber or similar waterproof material." Prohibited styles and designs include shoes that expose toes, heels, or any part of the top or sides of the feet, shoes made of canvas or other non-waterproof material, and shoes with a raised heel of any height.

d. Tattoos, Jewelry, and Piercings: Workers are prohibited from having more than one facial piercing and are prohibited from having tattoos on their face (defined as "the forehead to chin, and ear to ear"). Among other restrictions, workers are also prohibited from having certain other piercings and adornments, including tongue piercings and tooth gems.

15. Starbucks informed its employees that it would begin strictly enforcing the new mandatory 2025 Dress Code effective May 12, 2025. According to the written policy, workers who are not in compliance with the new dress code "will not be permitted to start their shifts." In addition, Starbucks informed workers that noncompliance with the new dress code would result in discipline, including but not limited to being counseled, warned, or terminated under its progressive discipline policy.

16. Many of the clothes employees, including Plaintiff, previously wore to work at Starbucks are no longer acceptable under the 2025 Dress Code and would subject them to discipline and/or cause them to be sent home without pay.

17. California Labor Code §1198 requires employers to comply with the minimum standard

conditions of labor for employees set forth in the Industrial Welfare Commission ("IWC") Wage Orders. Section 9(A) of IWC Wage Order 5-2001, in turn, mandates that when an employer requires employees wear uniforms, the employer must provide and maintain such uniforms. Further, under California Labor Code §2802(a), "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer."

18. Starbucks did not provide workers with shoes or sufficient apparel that satisfied its new mandatory 2025 Dress Code. Instead, employees had to purchase such items to avoid being disciplined or sent home without pay.

19. Although Starbucks later offered workers up to two compliant Starbucks-branded shirts, two shirts is insufficient, particularly for workers who work more than two days per week. In addition, many employees did not receive the two Starbucks-branded shirts until weeks after Starbucks began strictly enforcing the 2025 Dress Code and thus were forced to incur costs associated with purchasing enough compliant tops to get through the entire workweek or else be subject to discipline or loss of pay.

20. Moreover, Starbucks managers were informed by employees that they are unable to meet the requirements of the 2025 Dress Code with clothes and shoes already in their possession and thus are required to purchase new compliant apparel and shoes, and yet Starbucks maintains a policy and practice of not reimbursing workers for those necessary business expenditures. Such expenses that workers have incurred include but are not limited to: (1) the cost of purchasing a sufficient number of compliant solid black tops; (2) the cost of purchasing a sufficient number of compliant bottoms; (3) the cost of purchasing compliant shoes; and (4) the cost of removing tooth gems, facial piercings, and tattoos that do not comply with the 2025 Dress Code.

II. **Starbucks' Failure to Reimburse the Costs of Work-Required Use of Personal Cellular Phones.**

21. Around the same time it announced the 2025 Dress Code Policy, Starbucks required baristas and shift supervisors to download a scheduling app, SBUXPartnerHrs ("Scheduling App") on their personal cellular phones to learn their schedules, swap shifts with coworkers, and obtain additional shifts at other stores in their area.

22. Even prior to the rollout of the Scheduling App, for years and continuing to the present, Starbucks has required baristas and shift supervisors to use their own personal cellular phones for work-related activities, including learning of their schedule or shift changes from the store manager, swapping shifts with coworkers, or picking up additional shifts, without being reimbursed or indemnified by Starbucks for a reasonable percentage of their cellular plan or the daily cost associated with the use of their personal cellular phones.

23. Starbucks store managers and supervisors also regularly contact employees on their personal cellular phones via text message, again without reimbursing employees.

24. As a result, in the course of employment with Starbucks, employees have incurred unreimbursed business expenses related to the use of their personal cellular phones, to Starbucks' benefit. Such expenses were necessary because employees need a personal device with a data plan to download and use the Scheduling App and a cellular plan to respond to manager text messages. Under California law, such expenses must be reimbursed even where employees have unlimited cellular plans to avoid a windfall to Starbucks for passing operating expenses on to employees.

25. Starbucks knew or had reason to know that employees subject to its mandatory Scheduling App incurred such expenses or were covering Starbucks' operating expenses, and yet Starbucks maintained and continues to maintain a policy and practice of not reimbursing employees for expenditures incurred to comply with its mandatory Scheduling App or responding to store manager's text messages or calls.

### III. Plaintiff Serrana Cypret

26. Plaintiff Cypret has been employed by Starbucks as a barista and barista trainer since 2021, when she began working at the Starbucks store located at 260 Mt. Herman Road in Scotts Valley, California. Plaintiff Cypret, like all other baristas, barista trainers, and shift supervisors working for Starbucks in California, is an hourly, non-exempt employee. Plaintiff Cypret's hourly wage is $21.79. Plaintiff Cypret typically works five days per week and 30-35 hours per week at this Starbucks location.

27. When the new Dress Code was introduced, Plaintiff Cypret's store manager informed her that many of the clothes she used to wear to work no longer comply with the new requirements. For example, Plaintiff Cypret's store manager told her that she was no longer permitted to wear a pair of

6
COMPLAINT

light-washed jeans that she had previously routinely worn to work, and that if she wore them to work, she would need to go home and change into compliant clothes before being allowed to return to work. Since May 12, 2025, Starbucks has been strictly enforcing its 2025 Dress Code and has sent employees home without pay and/or written up employees for noncompliance, including employees at Plaintiff Cypret's store.

28. Starbucks did not provide Plaintiff Cypret with shoes or apparel that satisfied its new mandatory 2025 Dress Code. The two Dress Code-compliant shirts that Starbucks provided are not sufficient since Plaintiff Cypret works more than two days per week. And, because Plaintiff Cypret did not receive the two Starbucks-branded shirts until after Starbucks began strictly enforcing the 2025 Dress Code, she was forced to incur costs associated with purchasing enough compliant tops to get through the entire workweek or else be subject to discipline or loss of pay.

29. As a result of Starbucks' new, far more stringent 2025 Dress Code, Plaintiff Cypret has incurred approximately $197 in necessary business expenses, which includes approximately $125 purchasing several packs of black shirts and approximately $72 purchasing two pairs of dark-colored jeans. Starbucks has not reimbursed Plaintiff Cypret for these necessary business expenses. Plaintiff Cypret's store manager has made clear to employees at her store that Starbucks will not reimburse employees for Dress Code-related expenses.

30. The expenses Plaintiff Cypret incurred were necessary because she did not have a sufficient number of Dress Code-compliant shirts and pants and/or did not have Dress Code-compliant shoes, and because Starbucks did not provide employees with the necessary uniform. Such expenses were reasonable for the items Plaintiff Cypret needed to purchase to comply with Starbucks' 2025 Dress Code.

31. Like other Starbucks employees, Plaintiff Cypret has had to download and use the Scheduling App. In fact, as a barista trainer, Plaintiff Cypret is responsible for making sure new baristas download the Scheduling App and training them on how to use the Scheduling App to access their schedule, swap shifts, and perform other work-related tasks. Going over the Scheduling App is part of the official training module, and Plaintiff Cypret's managers have underscored to her the importance of training new baristas on how to use the Scheduling App.

32. Additionally, Plaintiff Cypret's current store manager texts her on her personal cell phone

approximately once every month, and her prior store manager (from approximately July 2023 until February 2025) used to text her on her personal cellular phone approximately twice each week about scheduling and other work-related matters.

33. As a result, Plaintiff Cypret has incurred necessary business expenses related to the use of her personal cellular phone. Starbucks provided Plaintiff Cypret with no reimbursement or indemnification for a reasonable percentage of her cellular plan or the daily cost associated with the use of her personal cellular phone.

**IV.  Class Allegations**

34. Plaintiff seeks damages on behalf of a Dress Code Class and a Cell Phone Class, as defined herein, under Rule 23(b)(3) of the Federal Rules of Civil Procedure, and further seeks declaratory and injunctive relief on behalf of a Dress Code Injunction Subclass and a Cell Phone Injunction Subclass, as defined herein, under Rule 23(b)(2) of the Federal Rules of Civil Procedure (collectively, "the Classes").

35. The Dress Code Class is defined as follows: All current and former hourly Starbucks employees in the job titles of barista or shift supervisor who, at any time since April 1, 2025, worked at a Starbucks location in California and purchased shoes or apparel or otherwise spent money in order to comply with Starbucks' 2025 Dress Code without being reimbursed.

36. The Dress Code Injunction Subclass is defined as follows: All Dress Code Class Members who are current hourly Starbucks employees in the job titles of barista or shift supervisor working at a Starbucks location in California.

37. The Cell Phone Class is defined as follows: All current and former hourly Starbucks employees in the job titles of barista or shift supervisor who, at any time since the date four years before the filing of this complaint, worked at a Starbucks location in California and downloaded and used the mandated Scheduling App and/or responded to text messages from store managers and other supervisors using their personal cellular devices without reimbursement.

38. The Cell Phone Injunction Subclass is defined as follows: All Cell Phone Class Members who are current hourly Starbucks employees in the job titles of barista or shift supervisor working at a Starbucks location in California.

39. The Classes are so numerous that joinder of all individual members would be

impracticable. Starbucks employs tens of thousands of individuals as baristas and shift supervisors in California, all of whom are now subject to the 2025 Dress Code and Starbucks' policies regarding use of the Scheduling App.

40. The questions of law and fact presented by Plaintiff's claims are common to all members of the Classes. Among others, questions common to the Classes include:

a. Whether Starbucks' 2025 Dress Code Policy mandated a uniform for all Starbucks hourly employees in California.

b. Whether Starbucks provided its California hourly employees uniforms necessary to comply with its 2025 Dress Code.

c. Whether Starbucks has a common policy and/or practice of not reimbursing its California hourly employees for expenditures incurred to comply with its 2025 Dress Code.

d. Whether Starbucks violated IWC Wage Order 5-2001 §9(a) and California Labor Code §§1198 and 2802 by failing to provide or reimburse employees for the cost of uniforms.

e. Whether Starbucks has a policy of requiring California hourly employees to download the Scheduling App.

f. Whether Starbucks has a policy and/or practice of requiring California hourly employees to use their personal cellular phones for work purposes.

g. Whether Starbucks has a policy and/or practice of not reimbursing California hourly employees for work-required use of their personal cellular phones.

h. Whether Starbucks' failure to reimburse employees for work-required use of their personal cellular phones violated California Labor Code §2802.

41. Common issues of law and fact predominate over any individual issues arising from the Class Members' claims against Starbucks for violations of the California Labor Code.

42. Plaintiff's claims are typical of the claims of the members of the Classes, all of whom, like Plaintiff, are subject to Starbucks' unlawful policies of failing to provide or reimburse employees for the cost of uniforms and failing to reimburse employees for the cost of work-required use of personal cell phones.

43. Plaintiff is an adequate class representative because her interests do not conflict with the

interests of the Class members whom she seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of Class members and have the financial resources to do so. The Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

44. A class action is superior to any other method for the fair and efficient resolution of this legal dispute, as joinder of all members of the Classes is impracticable. Further, the prosecution of tens of thousands of individual actions by individual members of the Classes would create a substantial risk of inconsistent or varying adjudications, which would establish potentially incompatible standards of conduct for Starbucks.

45. All members of the Class are ascertainable by reference to objective criteria, as Starbucks has access to addresses and other contact information for Class members that can be used for notice purposes.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**FAILURE TO PROVIDE OR REIMBURSE UNIFORM COSTS**
**VIOLATION OF CALIFORNIA LABOR CODE §§1198, 2802**
**AND IWC WAGE ORDER 5-2001 §9(a)**
*On Behalf of Plaintiff and the Dress Code Class and Dress Code Injunction Subclass*

46. Plaintiff realleges and incorporates by reference each and every allegation set forth above, as though fully set forth here.

47. California Labor Code §1198 requires employers to comply with the minimum standard conditions of labor for employees set forth in the IWC Wage Orders.

48. Section 9(A) of IWC Wage Order 5-2001 provides, "When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer," and specifies that "[t]he term 'uniform' includes wearing apparel and accessories of distinctive design or color." Cal. Code Regs. tit. 8, §11050(9)(A) (2025).

49. The apparel and accessories required under Starbucks' 2025 Dress Code are of "distinctive design or color" and are not "'usual and generally usable in the occupation.'" *Becerra v.*

*RadioShack Corp.*, No. 4:11-cv-03586 YGR, 2012 WL 6115627, at *3-4 (N.D. Cal. Dec. 10, 2012) (quoting 1980 IWC Wage Order Statement of Basis); *see id.* at *5. Thus, they qualify as a "uniform" under Wage Order 5-2001, which Starbucks was required to provide to its employees, but which it failed to do.

50. California Labor Code §2802(a) further provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer."

51. Starbucks violated IWC Wage Order 5-2001 §9(a) and California Labor Code §§1198, 2802 by failing to provide the required uniforms or reimburse Plaintiff and the Dress Code Class for expenses incurred to comply with the 2025 Dress Code.

52. As a direct result of Starbucks' failure to provide employees with the mandated uniforms, Plaintiff and other putative Dress Code Class Members were forced to make reasonable and necessary expenditures and incur losses purchasing shoes and apparel (and in some cases paying for procedures to remove face piercings, tattoos, and tooth gems) in order to comply with Starbucks' mandatory 2025 Dress Code, which Starbucks imposed as a condition of their employment.

53. Starbucks knew or had reason to know that Plaintiff Cypret and other employees subject to its mandatory 2025 Dress Code incurred such expenses, yet Starbucks maintained and continues to maintain a policy and practice of not reimbursing employees for expenditures incurred to comply with its mandatory 2025 Dress Code.

**SECOND CAUSE OF ACTION**
**FAILURE TO REIMBURSE WORK-RELATED CELL PHONE COSTS**
**VIOLATION OF CALIFORNIA LABOR CODE §2802**
*On Behalf of Plaintiff and the Cell Phone Class and Cell Phone Injunction Subclass*

54. Plaintiff realleges and incorporates by reference each and every allegation set forth above, as though fully set forth here.

55. California Labor Code §2802(a) requires employers to indemnify employees "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."

56. Under California Labor Code §2802(a), employers must "reimburse an employee for the

reasonable expense of the mandatory use of a personal cell phone," even when the employee did not incur an "extra expense" for the usage because they had a cellular phone plan with unlimited minutes. *Cochran v. Schwan's Home Serv., Inc.*, 228 Cal. App. 4th 1137, 1144 (2014) (requiring employer to "pay some reasonable percentage of the employee's cell phone bill" because "[o]therwise, the employer would receive a windfall because it would be passing its operating expenses on to the employee"); *accord Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 466, n. 4 (9th Cir. 2023); *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1078 n.10 (9th Cir. 2020) (explaining employer mandating employees use a particular app on personal devices "often requires personal expenses associated with internet service and a phone [], for which a ruling consistent with *Cochran* might require reimbursement of a portion of the bills" even when the employee has an unlimited phone plan).

57. As alleged herein, Starbucks failed to provide employees with any reimbursement—let alone a reasonable percentage of employees' cell phone bills—for mandated use of the employees' personal cellular phones.

58. As a result, Plaintiff Cypret and members of the Cell Phone Class were forced to make reasonable and necessary expenditures and incur losses or otherwise had Starbuck's operating expenses passed on to them when downloading and using the mandated Scheduling App and/or responding to text messages from store managers and other supervisors.

59. Starbucks knew or had reason to know that Plaintiff Cypret and other employees subject to its mandatory Scheduling App incurred such expenses or were covering Starbucks' operating expenses, and yet Starbucks maintained and continues to maintain a policy and practice of not reimbursing employees for expenditures incurred to comply with its mandatory Scheduling App or responding to the store manager's text messages.

### THIRD CAUSE OF ACTION
### ENFORCEMENT OF THE LABOR CODE
### PRIVATE ATTORNEYS GENERAL ACT OF 2004

60. Plaintiff realleges and incorporates by reference each and every allegation set forth above, as though fully set forth here.

61. Under California Labor Code §2699(a), any provision of the Labor Code "that provides

for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of the employee and other current or former employees … pursuant to the procedures specified in 2699.3."

62. Plaintiff and Aggrieved Employees are aggrieved employees within the meaning of California Labor Code §2699(c) because they were employed by Starbucks during the applicable statutory period and suffered one or more of the California Labor Code violations alleged herein.

63. Plaintiff brings this PAGA action in her individual and representative capacity on behalf of the State of California with respect to all Aggrieved Employees employed by Starbucks during the PAGA Period.

64. This action involves allegations of violations of provisions of the Labor Code that provide for a civil penalty to be assessed and collected by the LWDA.

65. Under California Labor Code §2699.3, Plaintiff gave written notice on September 17, 2025 to the LWDA (by online submission) and to Starbucks (by certified mail) of the specific provisions of the Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.[2] More than 65 days have passed, and the LWDA has not provided notice to Plaintiff that it intends to investigate the alleged violations.

66. Under California Labor Code §§2698-2699.5, Plaintiff, as representative of the State of California and on behalf of Aggrieved Employees, seeks to recover civil penalties, including but not limited to penalties under §2699 for Starbucks' violation of the following Labor Code sections:

    a. Unlawful failure to provide or reimburse employees for the cost of uniforms, in violation of IWC Wage Order 5-2001 §9(a) and California Labor Code §§1198 and 2802; and

    b. Unlawful failure to reimburse employees for the work-required use of their personal cell phones, in violation of California Labor Code §2802.

67. California Labor Code §2699(f) provides a general penalty "[f]or all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty

---

[2] See Ex. 1 (PAGA Notice).

for a violation of these provisions" of "one hundred dollars ($100) for each aggrieved employee per pay period." Plaintiff seeks to recover, on behalf of the State of California and all Aggrieved Employees, the civil penalties provided for under PAGA for Starbucks' Labor Code violations alleged herein.

68. Labor Code §2699(e)(1) provides for injunctive relief in connection with an employer's continuing Labor Code violations. Plaintiffs seek a public injunction enjoining Starbucks from continuing to engage in the Labor Code violations alleged herein.

69. Pursuant to Labor Code §2699(k)(1), Plaintiff seeks an award of costs and reasonable attorneys' fees under PAGA and additional relief as described herein and permitted by law.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**CALIFORNIA BUSINESS & PROFESSIONS CODE §17200 et seq.**

70. Plaintiff realleges and incorporates by reference each and every allegation set forth above, as though fully set forth here.

71. The California Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200, *et seq*. Starbucks has engaged in business acts and practices that, as alleged above, constitute unfair competition in violation of Business and Professions Code §17200.

72. Starbucks' unlawful conduct under the UCL includes violating IWC Wage Order 5-2001 §9(a) and California Labor Code §§1198, 2802.

73. Starbucks' business practices, as alleged herein, violate the "unfair" prong of the UCL because, by forcing Plaintiff and Class members to incur costs for necessary business expenditures and refusing to reimburse them, Starbucks unfairly passed its operating expenses on to its employees. Starbucks' conduct violates the public policy of Labor Code §§1198 and 2802, and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to workers and the public interest.

74. Any reasons, justifications, or motives that Starbucks may offer for the practices described herein are outweighed by the gravity of harm to the employee victims. The injuries suffered by Plaintiff and the Classes are substantial and are not outweighed by any countervailing benefits to consumers or competition.

75. Plaintiff and members of the Classes have standing to pursue this cause of action because they suffered injury in fact and lost money as a result of Starbucks' misconduct described herein.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests judgment against Defendant as follows:

A. That the Court certify the Classes as defined above, appointing Plaintiff as representative for the Classes, and appointing Plaintiff's counsel as counsel for the Classes;

B. That the Court issue declaratory and injunctive relief prohibiting Defendant from engaging in the misconduct described herein;

C. That the Court award Plaintiff and the Classes compensatory, consequential, general, nominal, and statutory damages (along with any other damages available at trial) to the extent permitted by law and in an amount to be determined at trial;

D. That the Court award Plaintiff, Aggrieved Employees, and the State of California PAGA penalties to the extent permitted by law and in an amount to be determined at trial;

E. That the Court award to Plaintiff and their counsel the costs of the action, along with reasonable attorneys' fees, costs, and expenses as provided by law;

F. That the Court award pre-and post-judgment interest at the maximum legal rate; and

G. That the Court grant all such other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to a jury trial.

Respectfully submitted,

Dated: December 4, 2025    By:    /s/ Connie K. Chan
BARBARA J. CHISHOLM, SBN 224656
bchisholm@altber.com
CONNIE K. CHAN, SBN 284230
cchan@altber.com
ELIZABETH ESHLEMAN, SBN 354649
eeshleman@altber.com
**ALTSHULER BERZON LLP**
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151

1
2  LISA DEMIDOVICH, SBN 245836
   ldemidovich@altber.com
3  **ALTSHULER BERZON LLP**
   350 Colorado Blvd., Suite 420
4  Pasadena, CA 91105
   Tel: (415) 421-1855
5
6  ELIZABETH GRDINA (Pro Hace Vice forthcoming)
   bgrdina@jamhoff.com
7  CHARLOTTE H. SCHWARTZ (Pro Hace Vice forthcoming)
8  chschwartz@jamhoff.com
   SEJAL SINGH (Pro Hace Vice forthcoming)
9  ssingh@jamhoff.com
10 **JAMES & HOFFMAN, P.C.**
   1629 K Street, NW, Suite 1050
11 Washington, DC 20006
   Tel: (202) 496-0500
12
13 *Attorneys for Plaintiff*

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28